IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMILY BRENNAN,<br>Pottsville, PA 17959<br><br>    *Plaintiff*,<br> v.<br><br>READING ANTHRACITE COMPANY,<br>200 Mahantongo Street<br>Pottsville, PA 17901<br><br>    *Defendant*. | CIVIL ACTION NO.:<br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### I. INTRODUCTION

After Plaintiff told Defendant that she was pregnant, she was terminated. At the termination meeting, Plaintiff's second-level supervisor, Defendant's Chief Financial Officer, told her: "if you're not going to be here, we might as well just part ways now" and terminated Plaintiff, who was the only pregnant employee. She was replaced by a less qualified, non-pregnant employee.

Plaintiff now brings claims against the Defendant to Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. §2000e, *et. seq.* ("Title VII"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq*. ("FMLA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory damages, punitive damages, liquidated damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

### II. PARTIES

1. Plaintiff, Emily Brennan, is an individual and citizen of the Commonwealth of Pennsylvania. She resides in Pottsville, Pennsylvania.

2. Plaintiff is female.

3. Defendant, Reading Anthracite Company, is organized under the laws of the State of Pennsylvania and maintains a principal place of business at 200 Mahantongo Street, Pottsville, Pennsylvania, 17901.

4. Defendant is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

5. At all times material hereto, Plaintiff worked out of Defendant's Pottsville office.

6. At all times material hereto, Defendant employed more than fifty (50) individuals.

7. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

8. At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

9. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes that form the basis of this matter.

### III. JURISDICTION AND VENUE

10. The causes of action which form the basis of this matter arise under Title VII, the FMLA, and the PHRA.

11. The District Court has jurisdiction over Count I (Title VII) and Count II (FMLA) pursuant to 28 U.S.C. §1331.

12. The District Court has jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

13. Venue is proper in this District Court under 28 U.S.C. §1391(b) and 42 U.S.C.

§2000e-5(f).

14. On or about May 6, 2019, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination alleged herein. Plaintiff's PHRC Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

15. On or about January 4, 2021, the EEOC issued the Plaintiff a Notice of Right to Sue for her Charge of Discrimination. Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

16. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV. FACTUAL ALLEGATIONS

17. Plaintiff was hired by Defendant on or about May 29, 2018 into the position of Staff Accountant.

18. Prior to being hired by Defendant in May 2018, Plaintiff served as an Auditor for the Defendant through her former employer for approximately two (2) years.

19. In light of her positive performance and rapport garnered during the years that she served as Defendant's Auditor, Plaintiff was recruited by Deborah Fehr ("Fehr") (female), Executive Secretary, to become Defendant's accountant.

20. At all relevant times, Plaintiff reported to Jo Ann Korzenaskie ("Korzenaskie") (female), Controller. Korzenaskie reported to John Rampolla ("Rampolla") (male), Chief Financial Officer. Rampolla reported to Brian Rich ("Rich"), Owner.

21. Plaintiff consistently performed her job duties in a highly competent manner.

22. In or about January 2019, and in connection with her strong performance, Plaintiff received a salary increase and bonus.

23. In or around February 2019, Plaintiff learned that she was pregnant and due to give birth in October.

24. Around this time, Plaintiff began experiencing and exhibiting pregnancy-related symptoms including, without limitation, morning sickness.

25. In or about early-March 2019, in a meeting with Fehr, Plaintiff informed Defendant that she was pregnant and was due to give birth in October. Plaintiff further stated that she planned to take maternity leave following the birth of her child.

26. Thereafter, throughout March 2019, Plaintiff informed several of her colleagues that she was pregnant.

27. Meanwhile, throughout March 2019, Plaintiff's morning and other pregnancy-related sickness worsened, requiring frequent trips to the bathroom.

28. On or about March 15, 2019, in a meeting, Plaintiff informed Korzenaskie that she was pregnant and requested time off for an appointment related to my pregnancy. During this meeting, Plaintiff requested time off on March 18, 2019 to attend a pregnancy-related doctors' appointment.

29. In or around mid-March 2019, during a conversation with Korzenaskie and Fehr, Plaintiff further discussed her plan to take maternity leave following the birth of her child and reviewed the Defendant's maternity leave policy.

30. During this conversation, Korzenaskie and Fehr struggled to recall the last time that an employee of Defendant had taken maternity leave and stated that it had been more than ten (10) years.

31. During this conversation, Korzenaskie and Fehr discussed the potential impacts that Plaintiff's maternity leave could have on Defendant's workflow and stated that they hoped that Plaintiff would return from maternity leave by January to prepare the Defendant's end-of-year financial materials.

32. On or about March 25, 2019, Plaintiff informed Korzenaskie that she was experiencing severe morning sickness and needed to leave work early.

33. Just days later, on or about March 29, 2019, Rampolla called Plaintiff into his office. During this meeting, Rampolla unjustly criticized Plaintiff's performance and accused her of failing to complete a task earlier in the week.

34. In response, Plaintiff stated that she was experiencing morning sickness in connection with her pregnancy and had missed a partial day of work that week as a result. Plaintiff further explained that she had completed the task ahead of her pregnancy-related absence and had made several attempts to connect with Rampolla that week to provide the work product.

35. In response, Rampolla stated if Plaintiff was "not going to be here, we might as well just part ways now."

36. During this meeting, Defendant terminated Plaintiff's employment, effective immediately.

37. At the time of her termination, Plaintiff was approximately twelve (12) weeks pregnant.

38. Defendant's stated reason for terminating Plaintiff, "poor performance," is pretext.

39. Plaintiff had no documented performance or disciplinary issues throughout her employment with Defendant and, prior to informing Defendant of her pregnancy and taking pregnancy-related leave, Plaintiff was never advised that her job was in jeopardy.

40. In terminating Plaintiff without prior warning, Defendant failed to follow its progressive discipline policy.

41. Plaintiff was not offered any opportunity to remain employed at Defendant.

42. Plaintiff was the only employee terminated by Defendant on March 29, 2019.

43. Defendant retained all male and/or non-pregnant female employees when Plaintiff was terminated.

44. Following her termination, Defendant assigned a portion of Plaintiff's job duties to Nicole Seltzer ("Seltzer") (female), Office Administrator.

45. Seltzer was not pregnant.

46. Plaintiff was more qualified to perform her job duties than Seltzer. Examples of the same include, without limitation, the following:

   a. Plaintiff had formal accounting education and training, while Seltzer did not;

   b. Plaintiff had several more years of accounting experience than Seltzer; and

   c. Seltzer had approximately three (3) months of experience working at Defendant, while Plaintiff had worked for the Defendant for approximately three (3) years through her employment and auditing work for Defendant.

47. Defendant did not provide any explanation to Plaintiff as to why a portion of her job duties were assigned to a less-qualified, non-pregnant employee.

48. Defendant terminated Plaintiff's employment because of her sex and/or pregnancy and/or request to take FMLA leave.

49. Plaintiff would have been entitled to leave under the FMLA following the birth of her child in or around October 2019.

50. By informing Defendant of her intention to take maternity leave in connection with

the birth of her child, Plaintiff invoked her rights under the FMLA.

51. Plaintiff provided adequate notice to Defendant of her need for medical leave by advising Defendant of her pregnancy as soon as practicable.

52. By terminating Plaintiff's employment after she disclosed her need for pregnancy-related leave, Defendant interfered with Plaintiff's rights to protected leave under the FMLA.

53. By terminating Plaintiff's employment after she disclosed her need for pregnancy-related leave, Defendant retaliated against Plaintiff for invoking her rights under the FMLA.

54. Defendant's violations of the FMLA were willful.

55. Defendant engages in a pattern or practice of discriminating against female employees. Examples of the same include, without limitation, the following:

   a. Defendant critiqued the performance of its female employees more harshly than it critiqued the performance of its male employees;

   b. Defendant pursued more serious disciplinary measures against female employees than male employees engaging in similar conduct;

   c. Upon information and belief, Defendant compensated its female employees less than their male comparators for substantially similar work.

56. Defendant's demographics evidence a bias against female employees. Examples of the same include, without limitation, the following:

   a. At all relevant times, Defendant had an underrepresentation of female employees, particularly in high level and/or leadership positions;

   b. At all relevant times, Defendant's female employees were concentrated into office and/or administrative roles;

   c. In or around December 2018, Plaintiff was told by a member of Defendant's

leadership that no female employee, including Plaintiff, would ever hold the Chief Financial Officer position.

57. Plaintiff's sex and/or pregnancy were motivating and/or determinative factors in Defendant's discriminatory treatment of Plaintiff, including, without limitation, in connection with her termination.

58. Plaintiff's invocation of her rights under the FMLA was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including, without limitation, in connection with her termination.

59. As a direct and proximate result of the discriminatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

60. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

61. Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights.

62. The conduct of Defendant, as set forth above, was outrageous and warrants the imposition of punitive damages against Defendant

## **COUNT I – TITLE VII**

63. Plaintiff incorporates by reference paragraphs 1 through 62 above, as if set forth herein in their entirety.

64. By committing the foregoing acts of discrimination against Plaintiff, Defendant has violated Title VII.

65. Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

66. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

67. Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

## COUNT II – FMLA

68. Plaintiff incorporates by reference paragraphs 1 through 67 above, as if set forth herein in their entirety.

69. By committing the foregoing acts against Plaintiff, Defendant has violated the FMLA.

70. Defendant's conduct was retaliatory and/or interfered with Plaintiff's rights under the FMLA.

71. Said violations were not in good faith, and Defendant did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

72. The imposition of liquidated damages is warranted.

73. As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has the suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

74. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's violations of the FMLA unless and until this Court grants the relief requested herein.

75. No previous application has been made for the relief requested herein.

## COUNT III – PHRA

76. Plaintiff incorporates by reference paragraphs 1 through 75 above, as if set forth herein in their entirety.

77. By committing the foregoing acts of discrimination against Plaintiff, Defendant has violated the PHRA.

78. Said violations were intentional and willful.

79. As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

80. Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

    a. Declaring the acts and practices complained of herein to be in violation of Title VII;

    b. Declaring the acts and practices complained of herein to be in violation of the FMLA;

  c. Declaring the acts and practices complained of herein to be in violation of the PHRA;

  d. Enjoining and permanently restraining the violations alleged herein;

  e. Entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

  f. Awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, which Plaintiff has suffered as a result of Defendant's improper conduct;

  g. Awarding compensatory damages to Plaintiff for past pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered as a result of Defendants' improper conduct;

  h. Awarding punitive damages to Plaintiff;

  i. Awarding liquidated damages to Plaintiff;

  j. Awarding Plaintiff other such damages as are appropriate under Title VII, the FMLA, and the PHRA;

  k. Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

  l. Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACI LAW, LLC**

Dated: <u>April 1, 2021</u>     By:     <u>*/s/ Laura C. Mattiacci*</u>
Laura C. Mattiacci, Esquire
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676

*Attorneys for Plaintiff,
Emily Brennan*